## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**F.M., S.J., A.M., M.L.,**
**M.M., M.S., M.A., L.R.,**
**M.O., C. M., J. K., and S. W.**

     **Plaintiffs,**

**v.**                                   **1:13-CV-00264 ACT/RHS**

**DR. MARK WALDEN, JOHN/JANE DOE (medical staff),**
**in their individual and official capacities**
**JOHN/JANE DOE (corrections officers),**
**in their individual and official capacities,**
**THE GEO GROUP, Inc., and CORIZON Inc.,**
**WARDEN TIMOTHY B. HATCH, in his individual**
**and official capacity,**
**and WARDEN ERASMO BRAVO, in his individual**
**and official capacity,**

     **Defendants.**

## FIRST AMENDED COMPLAINT FOR NEGLIGENCE, MEDICAL MALPRACTICE, NEGLIGENT HIRING, TRAINING SUPERVISION AND RETENTION, CIVIL RIGHTS VIOLATIONS, NEGLIGENCE PER SE, BREACH OF CONTRACT AND DAMAGES

Plaintiffs F.M., S.J., A.M., M.L., M.M., M.S., M.A., L.R., M. O., J. K., S.W., and C.M. through their counsel of record, The Law Office of Frances Crockett, Frances Carpenter, bring this Complaint for negligence, medical malpractice, negligent hiring, training, supervision and retention, negligence per se, breach of contract, and violation of their civil rights under the Eighth and Thirteenth Amendments to the United States Constitution and 42 U.S.C § 1983, as well as pendant State law claims. Plaintiffs allege as follows:

## JURISDICTION, PARTIES, AND VENUE

1.      Jurisdiction and venue are proper in Santa Fe County.

2.      Upon information and belief, Defendant Mark Elliot Walden (hereinafter "Walden") was a resident of New Mexico and was employed by Defendant Corizon to provide medical care at Guadalupe County Correctional Facility (hereinafter "GCCF") and Northeastern New Mexico Detention Facility (hereinafter "NENMDF") at all times relevant herein. At all times pertinent hereto, Defendant Walden was acting within the course and scope of his employment

3.      At all times pertinent hereto, Defendant Walden was not covered by the Medical Malpractice Act. The Plaintiffs have done everything necessary under the New Mexico Medical Malpractice Act for this Court to have jurisdiction over this case.

4.      Defendants John/Jane Doe (medical staff) were residents of New Mexico at all times relevant herein.

5.      Defendants John/Jane Doe (corrections officers) were residents of New Mexico at all times relevant herein.

6.      Upon information and belief, Defendants John/Jane Doe medical staff and/or correction officers knew or had reason to know that Defendant Walden was sexually assaulting Plaintiffs and not practicing proper hygiene as alleged with more specificity herein.

7.      At all times relevant herein, The Geo Group, Inc. (hereinafter "GEO"), is a registered foreign corporation transacting business in New Mexico. GEO may be served through their registered agent, Corporate Creations Network, Inc., 400 N. Pennsylvania Ave. #600, Roswell, New Mexico 88201.

2

8.      Upon information and belief, during all times relevant to this Complaint, Defendant GEO owned and operated GCCF and NENMCF  pursuant to a contract with the New Mexico Corrections Department.

9.      Defendant Corizon, Inc. (hereinafter "Corizon") is a privately held foreign corporation transacting business in New Mexico. At all times pertinent hereto Defendant Corizon was responsible for providing medical care to inmates at GCCF  and NENMCF pursuant to a contract with the New Mexico Corrections Department.   Defendant Corizon may be served through their registered agent, CT Corporation System, 123 East Marcy, Santa Fe, New Mexico, 87501.

10.     At all times pertinent hereto, Defendant Corizon Healthcare Services was a licensed New Mexico healthcare facility in Guadalupe and Union County, New Mexico.

11.     Corizon was not covered by the Medical Malpractice Act at any time pertinent hereto and its liability for damages is not capped by the Act

12.     At all times pertinent hereto, Defendants GEO and Corizon acted through their owners, officers, directors, employees, agents or apparent agents, including but not limited to administrators, management, nurses, doctors, technicians, and other staff/personnel and are responsible for their acts or omissions pursuant to the doctrines of *respondeat superior,* agency or apparent agency.

13.     At all times pertinent hereto, Defendants GEO and Corizon had a policy and practice or trade thereof  deliberate indifferent to the reality of physical and sexual assault of prisoners/inmates which proximally causing them harm.

14.     At all times material hereto, Defendants Corizon and GEO acted through their employees, medical staff, and nursing staff and are liable for their acts or omissions pursuant to the doctrine of *respondeat superior*.

15.     Defendants Corizon and GEO are liable for the acts and omissions of Defendant Walden as a result of negligent credentialing, negligent supervision, or because he was acting as an agent of Corizon and GEO.

16.     At all times pertinent hereto, Defendant Walden, upon information and belief, was acting as an agent of Defendants Corizon and GEO.

17.     In the alternative, Defendants Corizon and GEO are liable for the acts and omissions of Defendant Walden under the doctrine of apparent agency.  Defendants Corizon and GEO operated a health care clinic thereby creating the appearance that Defendants Corizon and GEO were the providers of medical services.  When Defendant Walden rendered medical care in the Corizon and GEO clinic, the appearance was that Corzion and GEO were rendering that care.  Plaintiffs justifiably relied upon the clinics to provide complete and competent medical care through Defendant Walden.

18.     Defendants Corizon and GEO are liable for their own negligent policy-making; their failure to establish adequate guidelines for sexual assault; their failure to adequately train; and their failure to adequately staff their facility

19.     Defendant Hatch was at all material times the Warden of the NENMDF. Defendant Hatch is sued in his individual and official capacities.

20.     Upon information and belief, Defendant Hatch was responsible for oversight of the NENMDF, including providing proper management and oversight and

developing appropriate formal and informal policies, procedures and inmate safety protections at the facility.

21.     Defendant Erasmo Bravo (hereinafter "Bravo") was at all material times the Warden of the GCCF in Santa Rosa, New Mexico.

22.     Upon information and belief, Defendant Bravo was responsible for oversight of the GCCF, including providing proper management and oversight and developing appropriate formal and informal policies, procedures and inmate safety protections at the facility.

23.     Upon information and belief, at all times pertinent to this complain, Plaintiffs S. J., A.M., M. L., M.S., L. R., C. M., J. K., and S. W.  were inmates housed at GCCF in Santa Rosa, New Mexico.

24.     Upon information and belief, at all time pertinent to this complaint, Plaintiffs F.M. and M.M., and M.O. were inmates house at NENMDF.

25.     Upon information and belief, Plaintiffs are not properly informed or instructed on the Prison Litigation Reform Act (hereinafter "PLR") and grievance process.

26.     At all times pertinent to this complaint, Plaintiffs were in and under the direct and continuous custody, control, and supervision of Defendants.

27.      All of the acts complained of occurred in New Mexico.  Plaintiffs' causes of action arose in Santa Rosa, Guadalupe County, New Mexico and in Clayton, Union County, New Mexico.

28.     The law applicable to this case is the law of the state of New Mexico.

29.     This Court has jurisdiction over the parties and the subject matter.

30.     Venue is proper in this Court.

31.     Venue is proper in this district.

## FACTUAL BACKGROUND – COMMON TO ALL PLAINTIFFS

32.     The potential for sexual abuse and sexual misconduct directed toward inmates by prison personnel is a well-known problem to those operating prisons that creates a duty on the part of prison administrators to protect inmates from such misconduct.

33.     Such sexual abuse and sexual misconduct has ramifications not only for those individuals who are victimized, but for our society as a whole.

34.     Inmates represent a particularly vulnerable population when it comes to sexual abuse because of the disparity in power between inmates and personnel working in prisons.

35.     As a result, inmates view reporting of abuse as futile because:

        a.   reporting abuse to staff is humiliating and subjects them to the risk of retaliation;

        b.   they fear that complaints will not be kept confidential by staff, thereby subjecting them to risk of ridicule and abuse by other inmates;

        c.   reporting would effectively sever their access to medical services;

        d.   as a result of their inmate status, complaints are often not taken seriously, they have few advocates, their welfare is a low priority, and they have limited ability to change their circumstances or to effectively prevent misconduct; and

        e.   given their sense of isolation and their belief that a doctor's status in society would place the doctor's word above that of the individual inmate.

6

36.     In order to protect this vulnerable population, those who operate prisons are subject to stringent rules, regulations, and common sense standards of care regarding the prevention of sexual abuse in their facilities.

37.     Upon information and belief, Defendant GEO entered into for-profit contracts with governmental entities in the state of New Mexico to operate and manage prisons.

38.     Upon information and belief, from 2010 to 2012, Corizon contracted with the New Mexico Corrections Department to provide healthcare services in New Mexico prisons.

39.     Upon information and belief, in July of 2011, Corizon contracted with the New Mexico Corrections Department to provide healthcare services in New Mexico prisons in exchange for $14,062,500.00 for a period from July 1, 2011 to September 30, 2011.

40.     Upon information and belief, in June of 2012, Corizon entered into a four-year contract with the New Mexico Corrections Department that provided Corizon would be paid $37,500,000.00 for the first year of the contract, and an amount not to exceed $177,650,000.00 for the four year term of the contract, in exchange for providing healthcare services in New Mexico prisons.

41.     Acting under contract with the State of New Mexico to house inmates, Defendant GEO operated the NENMDF and GCCF at all times relevant to the current Complaint.

42.     Defendant Corizon provided these services at all times relevant to the current Complaint while acting under contract with the State of New Mexico and GEO to provide correctional healthcare services.

43.     Acting in his capacity as a medical professional, Defendant Walden provided medical care to Plaintiffs during the time period that the conduct at issue occurred.

44.     At the time of conduct at issue, all Plaintiffs were incarcerated in GEO owned and operated facilities in New Mexico pursuant to terms of a private corrections facility contract between GEO and the State of New Mexico.

45.     At the time of the conduct at issue, all plaintiffs were patients of Defendant Walden and Defendant Corizon pursuant to terms of a correctional health services contract established between Corizon and GEO.

46.     At the time of the events described herein, Defendants had assumed a legal duty to lawfully, safely, and humanely operate healthcare service provision at GEO owned and operated correctional facilities in New Mexico.

47.     At the time of incarceration, Plaintiffs received an inmate handbook outlining procedures for recognizing and reporting inappropriate sexual contact by employees or other inmates.

48.     Included in the handbook were descriptions of prohibited acts including, "intentional sexual touching or physical contact in a sexual manner…of the genitalia, anus, groin…with or without the consent of the person; or any touching or inappropriate

viewing with intent to arouse, humiliate, harass, degrade, or gratify the sexual desire of any person." [1]

49.     During a period of time beginning in 2010 and continuing through July of 2012, Plaintiffs were subjected to behavior of a sexual nature during both routine and symptom specific examinations by Defendant Walden.

50.     Defendant Walden's behavior included the following inappropriate and medically unnecessary acts: digital penetration and probing of the anal cavity, digital prostate massaging, manual stimulation of the penis and testicles resulting in ejaculation, and manual stimulation of the penis and testicles not resulting in ejaculation.

51.     For-profit companies contracting with the state of New Mexico to provide services to inmates, including and especially medical care must take appropriate steps to identify and prevent sexual abuse and protect patient welfare and Constitutional rights to the same as their state-operated counterparts.

52.     For-profit companies contracting with the state of New Mexico to provide services to inmates must also ensure that they provide adequate training, supervision, and discipline regarding sexual abuse in their facilities.

53.     These duties include adequately training and supervising staff to be alert for and report suspicious activities between co-workers and inmates, learning to identify possible sexual abuse, developing systems so that staff and inmates are free from retaliation for reporting suspicious activities, and knowing how to properly investigate allegations of or perceived possible sexual abuse.

---

[1] GEO Inmate Handbook p. 51

54.     It also includes enacting and enforcing appropriate policies regarding background checks, staff evaluations and staff discipline.

55.     When made aware of possible instances of sexual abuse and potential violations of inmate rights, companies such as GEO and Corizon cannot maintain the status quo at their facilities, but must act immediately to put a stop such misconduct.

56.     Prison operators are required to ensure that whenever a medical professional is examining a patient, a second person be in the exam room to supervise the contact.

57.     Upon information and belief, Corizon hired Defendant Walden to be the facility doctor at the Guadalupe County Correctional Facility in Santa Rosa, New Mexico – a facility operated by Defendant GEO.

58.     Upon information and belief, Defendants John/Jane Doe correction officers and medical staff  knew, should have known, or kept themselves willfully blind to the fact that Defendant Walden was sexually abusing inmates while he was supposed to be providing medical care, through the reports and perceptions of inmates to staff members including nurses, mental health practitioners, and correctional officers.

59.     Upon information and belief, Defendants Corizon and GEO knew, should have known, or kept themselves willfully blind to the fact that Defendant Walden was sexually abusing inmates while he was supposed to be providing medical care, through the reports and perceptions of inmates to staff members including nurses, mental health practitioners and correctional officers.

60.     Despite this knowledge, Defendants Corizon and GEO, through their employees and agents, negligently, willfully or knowingly continued to grant Defendant

Walden unsupervised access to victims by retaining Defendant Walden as an employee and allowing him to continue working at GCCF and NENMDF.

61.     Upon information and belief, Defendants Corizon and GEO did not encourage reporting or documentation of these incidents, and enacted no discipline or retraining of Defendant Walden.

62.     Defendants Corizon and GEO allowed Defendant Walden's sexual abuse to continue by retaining him to provide medical care at GCCF, thus continuing to give him access to potential victims.

63.     Despite knowing of the risk of sexual abuse and having the ability to know that Defendant Walden was repeatedly sexually abusing patients and providing other incompetent care, Corizon hired Defendant Walden as the facility doctor at the Northeastern New Mexico Detention Facility in Clayton, New Mexico – another facility operated by Defendant GEO.

64.     When Defendants Corizon and GEO transferred Defendant Walden to be the facility doctor at NENMDF, they provided him with a new pool of potential victims, and in doing so ratified his conduct and effectively communicated to Defendant Walden that his behavior would not be subject to discipline or termination.

65.     Defendants Corizon and GEO were made aware that Defendant Walden sexually abused his patients at NENMDF through the written grievance procedure as well as oral reports to nurses, mental health practitioners, and correctional officers yet did not act to stop the abuse.

66.     In an effort to reduce exposure for their wrongdoing and failure to enact adequate inmate protections, upon information and belief, Defendants Corizon and GEO

did not encourage reporting or documentation of these incidents, did not establish systems to protect the inmate population under their protection who, because of their vulnerability, might be afraid to report a doctor's misconduct, and enacted no discipline or retraining of Defendant Walden.

67.     Defendants Corizon and GEO allowed the sexual abuse of inmates under their care to continue until finally it was reported to the Clayton Police Department in July of 2012.

## DEFENDANTS WARDEN BRAVO AND WARDEN HATCH

68.     Prison wardens have the ability to control the conduct of their staff and are responsible for ensuring that the facilities they operate are safe and free from abuse, including sexual abuse by prison personnel.

69.     Prison wardens are also responsible for ensuring that personnel hired and retained are properly trained and supervised, and do not pose a danger to inmates housed under their care.

70.     Prison wardens are responsible for ensuring that their facilities have and enforce adequate policies and disciplinary measures to keep the facility running safely.

71.     Upon information and belief, Defendants Bravo and Hatch knew that Defendant Walden was abusing his patients at both the GCCF and the NENMDF, yet did not act to stop it by adopting or enforcing appropriate policies, training, discipline or investigation procedures.

72.     Instead, Defendants Bravo and Hatch perpetuated lax inmate protections and a culture that allowed this pervasive abuse to continue.

## DEFENDANT WALDEN

73.     To prevent abuse, those operating prisons must be aware of and sensitive to the conditions and phenomena that make inmates especially vulnerable.  To that end, prison officials have a duty to be aware that sex abusers seek employment among vulnerable populations, including a duty to investigate potential employees and to ensure a high degree of supervision for all employees in direct contact with inmates.

74.     Allowing doctors unsupervised access to patients with no third party present gives rise to the risk of sexual abuse.

75.     Left in an unsupervised setting, doctors who wish to commit abuse can mask inappropriate conduct by falsely presenting it to the patient as necessary medical care.

76.     This is especially true for doctors in prisons, where patients are especially vulnerable because they have a great power disparity with prison personnel, they have no choice of doctor, their complaints are not taken seriously or acted upon, they are subject to punishment, and the prison climate discourages reporting of abuse in the absence of significant and well known protections for those reporting such abuse or potential abuse.

77.     Defendant Walden is a medical doctor who was granted access to a vulnerable pool of victims at the GCCF and the NENMDF.

78.     Upon information and belief, Defendant Walden has also had a family practice clinic in which he offered medical services to patients of all ages.

79.     Upon information and belief, Defendants did not adequately screen or perform a background check on the personal and professional license of Defendant Walden.

80.    Under the guise of providing appropriate medical care, Defendant Walden abused his position at GCCF and NENMDF by using his position as a facility doctor to sexually abuse inmates including Plaintiffs.

81.    At this time it is known that Defendant Walden sexually abused at least 25 victims, the very nature of his abuse, as well as Defendants GEO, Corizon, Bravo, and Hatch's policies of not encouraging reporting, investigation and eradication of sexual abuse, means that at this point there are likely many victims who have not yet come forward.

82. Further, in connection with performing inappropriate sexual acts on his patients, Defendant Walden did not employ proper hygiene and disease prevention standards. Often and in many instances, Defendant Walden did not wear gloves prior to and during contact with Plaintiffs thereby endangering the health of all inmates he treated, as well as all other staff members working at these facilities and anyone else with whom he came in contact.

### DEFENDANT JOHN/JANE DOE MEDICAL STAFF AND CORRECTION OFFICERS

83.    Upon information and belief, Defendants John/Jane Doe medical staff and/or correction officers knew or had reason to know that Defendant Walden was sexually assaulting Plaintiffs and not practicing proper hygiene as alleged with more specificity herein.

84.    Defendants John/Jane Doe medical staff and/or correction officers were in close proximity to the inmates when they were receiving treatment by way of transporting inmates to see Defendant Walden and transporting them back to their cell after being sexually assaulted by Defendant. Walden.

85.     In many cases, Defendant Walden was not wearing gloves during his examination and Defendants John/Jane Doe medical staff and/or correction officers knew of this and failed to report this. Further, Defendants John/Jane Doe medical staff and/or correction officers knew that Defendant Walden was, among other things, pulling privacy curtains in his dealings with inmates and often times whispering to inmates to be quiet while behind the curtain. Yet, Defendants John/Jane Doe medical staff and/or correction officers never reported the suspicious behavior and violations of policy.

## FACTUAL BACKGROUND – SPECIFIC TO EACH PLAINTIFF

86.     Defendants perpetrated and facilitated ongoing sexual abuse of inmates seeking medical treatment as follows. Each instance of abuse constitutes a separate occurrence.

87.     On or about February 17, 2012, Plaintiff F.M. went to see Defendant Walden to request hemorrhoid cream. Defendant Walden explained that he had to see the hemorrhoid before he could prescribe the cream.

88.     Defendant Walden instructed Plaintiff F.M. to lie down on his side, lower his pants, and bring his knees to his chest. Defendant Walden then proceeded to digitally penetrate Plaintiff F.M. with his entire ungloved fist. The digital rectal exam was inappropriate in terms of methodology and length.

89.     Plaintiff F.M. was sexually assaulted by Defendant Walden several times between February and July of 2012.

90.     There was no nurse present during Plaintiff F.M's examinations.

91.     Plaintiff F.M. reported the incidents to prison officials. Plaintiff F.M. has suffered and continues to suffer from nightmares and anxiety related to the sexual assault.

15

92.     On or about March 3, 2011, Plaintiff M.A., age 29, had an appointment with Defendant Walden to address some side pain. At the initial appointment Defendant Walden told M.A. he needed to perform a digital rectal exam. Defendant M.A. had never had a digital rectal exam and did not know what to expect.

93.     During the exam, Defendant Walden instructed Plaintiff M.A. to remove his pants and lie on his side with his knees close to his chest. Defendant Walden preformed a digital rectal exam that was inappropriate in terms of length and methodology.

94.     Upon information and belief, Defendant Walden digitally penetrated Plaintiff M.A. a total of 4 times during separate sick calls. Each occurrence lasted between 8-9 minutes. During the second digital rectal exam Defendant Walden caused Plaintiff M.A. to ejaculate, stating that it was necessary to check his sperm.

95.     Upon information and belief, after the fourth and final exam, Defendant Walden threatened Plaintiff M.A., "I would not tell anyone if you would not tell anyone."

96.     Plaintiff M.A. was forced by necessity to return to Defendant Walden for follow up care.

97.     Upon information and belief, there were no nurses present during any of Plaintiff M.A.'s encounters with Defendant Walden.

98.     On or about September 23, 2010, Plaintiff S.J. was seen by Defendant Walden. Defendant Walden told S.J. that he wanted to perform a digital rectal exam and touched Plaintiff S.J.'s chest and back inappropriately causing Plaintiff S.J. to feel extremely uncomfortable. Defendant Walden also placed himself on his knees in front of Plaintiff S.J.  to examine and fondle his genitals.

99.     Plaintiff S.J. declined the digital rectal exam and left the medical unit. Because he was afraid to go back, Plaintiff S.J. did not seek further medical treatment from Defendant Walden despite his need for medical care.

100.    There were no nurses present during Plaintiff S.J.'s examination.

101.    On or about September 23, 2010, Plaintiff M.L. was seen by Defendant Walden. During the encounter Defendant Walden placed himself on his knees in front of Plaintiff M.L. to examine his groin. Defendant Walden began stroking Plaintiff M.L.'s penis stating that it was medically necessary.

102.    Plaintiff M.L. declined further medical treatment, dressed, and left the medical unit. Because he was afraid of Defendant Walden, Plaintiff M.L. did not return for follow up care despite his need for medical care.

103.    There were no nurses present during Plaintiff M.L.'s examination.

104.    In 2010, Plaintiff A.M. was seen by Defendant Walden several times. During the encounters Defendant Walden would touch Plaintiff A.M.'s genitals and groin area without wearing gloves. Upon information and belief, Defendant Walden repeatedly asked Plaintiff A.M. if he could perform a digital rectal exam.

105.    Plaintiff A.M. declined the digital rectal exams and reported Defendant Walden's actions.

106.    There were no nurses present during the examination of Plaintiff A.M.

107.    Upon information and belief, Plaintiff M.M. has a birth defect which requires yearly medical maintenance. In the summer of 2012, Plaintiff M.M. went to Defendant Walden for his yearly check up. Defendant Walden put on gloves, pulled a privacy curtain, so nurses could not see, and removed his gloves. Defendant Walden then

began touching Plaintiff M.M. without gloves. Defendant Walden inappropriately touched Plaintiff M.M genital area.

108.   Plaintiff M.M. left the medial unit and refused further medical treatment from Defendant Walden despite his need for medical care.

109.   On or about November 2, 2010, Plaintiff L.R. was seen by Defendant Walden. Upon information and belief, Defendant Walden sexually assaulted and bettered Plaintiff L.R. by inappropriately touching Plaintiff L.R. without wearing gloves. Defendant Walden's actions were inappropriate and not medically necessary.

110.   Upon information and belief, between 2010 and 2012, Plaintiff M.O. went to Defendant Walden for medical care. Defendant Walden inappropriately touched Plaintiff M.O.'s genital area.

111.   Due to necessity, Plaintiff M.O. was forced to continue receiving medical treatment from Defendant Walden.

112.   On or about September 2, 2010, Plaintiff C. M. was seen by Defendant Walden.

113.   Defendant Walden instructed Plaintiff C. M.  to remove his pants. Defendant Walden then pulled up a chair and sat in front of Plaintiff C. M. and began to fondle Plaintiff C. M.'s penis and scrotum.

114.   Plaintiff C. M. asked Defendant Walden what was happening, but Defendant Walden did not answer. Instead Plaintiff C. M. was told to turn around. Defendant Walden then bent Plaintiff C. M. over the medical table, pushed Plaintiff C. M.'s buttocks apart and inserted his thumb and index finger in to Plaintiff C. M.'s anus.

115.   Defendant Walden told Plaintiff C. M. to relax. Plaintiff C. M. was very nervous and asks if he is ok to which Defendant Walden replied, 'you're very good.'

116.   After the prostate exam Defendant Walden massaged Plaintiff C.M.'s neck and shoulders in a sexually inappropriate manner.

117.   Defendant Walden sexually assaulted and bettered Plaintiff C. M. by inappropriately touching Plaintiff C. M. without wearing gloves. Defendant Walden's actions were inappropriate and not medically necessary.

118.   There were no nurses present during Plaintiff C .M.'s examination.

119.   Plaintiff J. K. saw Defendant Walden for shoulder pain and as part of his chronic care health maintenance.

120.   Defendant Walden instructed Plaintiff J. K. to remove his pants, and sat in front of Plaintiff J. K. while Defendant Walden fondled Plaintiff J. K.'s penis and scrotum.

121.   Defendant Walden then told Plaintiff J. K. to bend over and touch his toes while Defendant Walden discussed his labs.

122.   Upon information and belief, Plaintiff J. K. was sexually assaulted in a similar manner by Defendant Walden a total of three separate times.

123.   There were no nurses present during the examination of Plaintiff J. K.

124.   The procedures Defendant Walden preformed on Plaintiff J. K. were medically unnecessary and were sexually inappropriate.

125.   Upon information and belief, Plaintiff S. W. saw Defendant Walden for shoulder pain.

126.    During the course of his examination Plaintiff S. W. was instructed to remove his pants and was given a prostate exam that was medically unnecessary and inappropriate in length.

127.    There were no nurses present during the examination of Plaintiff S. W.

128.    Based upon the duration and breadth of the sexual abuse occurring at GCCF and NENMDF, Defendants knew, had reason to know, and/or kept themselves willfully blind to the obvious risk they were creating and knowingly permitting it to continue.

## COUNT I - SUBSTANTIVE DUE PROCESS/DANGER CREATION – VIOLATION OF BODILY INTEGRITY AND PERSONAL SECURITY – ALL NAMED DEFENDANTS

129.    All pervious paragraphs are incorporated herein by reference.

130.    Defendants acted, pursuant to policy and custom, with reckless disregard for Plaintiffs' right "not to be subjected to serious dangers created by and under the control of the Defendants."

131.    Plaintiffs were at all material times under the care, control, and custody of Defendants and Defendants had a non-delegable duty to ensure the safety of all persons under their direct care, control, and custody, including Plaintiffs herein.

132.    Defendants' reckless disregard of Defendant Walden's actions as well as Defendants' own actions and omissions as stated with more specificity herein caused Plaintiffs to be subjected to serious danger.

133.    The constitutional right to bodily integrity and personal security is part of the substantive due process right all United States citizens are afforded under the United States and New Mexico Constitution.

134.     As a proximate result of the Defendants acts and omissions as stated with greater specificity herein, Plaintiffs' were harmed, as alleged herein, in that they were unlawfully deprived of their constitutional right to bodily integrity and personal security.

135.     As a proximate result, Plaintiffs' suffered damages which include, but are not limited, to physical injuries, pain and suffering, lost liberty, and psychological and emotional distress.

### COUNT II -  42 U.S.C. 1983[2] CUSTOM, PRACRTICE, OR POLICY CAUSING VIOLATION OF CONSTITUTIONAL RIGHTS – DEFENDANTS GEO, CORIZON, WARDEN BRAVO, AND WARDEN HATCH

136.     Plaintiffs incorporate paragraphs 1 through 116 as though fully set forth herein.

137.     Defendants' acts and omissions were pursuant to policy and custom causing the violations of the Constitutional rights of Plaintiffs.

138.     Defendants promulgated, created, implemented or possessed responsibility for the continued operation of a policy that caused the complained of constitutional harm, and acted with reckless disregard for the rights of Plaintiffs as secured by the Constitution.

139.     As a proximate result, Plaintiffs' suffered damages which include but are not limited to physical injuries, pain and suffering, lost liberty and psychological and emotional distress.

---

[2] § 1983 allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which "subjects, or causes to be subjected" that plaintiff "to the deprivation of any rights ... secured by the Constitution ...." (quoting 42 U.S.C. § 1983). *Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010).

## COUNT III –
## CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF EIGHTH AMENDMENT AGAINST DEFENDANT WALDEN

140.    All pervious paragraphs are incorporated herein by reference.

141.    By and through the actions described above, Defendant Walden violated the Eighth Amendment right of Plaintiffs to be free from cruel or unusual punishment. In particular, Defendant Walden violated Plaintiffs' right to be afforded a reasonable degree of safety from serious bodily attack and to be secure in their bodily integrity.

142.    The actions of Defendant Walden in assaulting Plaintiffs and violating their clearly established constitutional rights were effected in a manner that was objectively unreasonable, intentional, willful, and wanton, and done in gross and reckless disregard of Plaintiffs' rights.

143.    Defendant Walden's unlawful sexual assaults, his violation of inmates' bodily integrity and right to personal security proximately caused Plaintiffs to suffer damages and injuries.

144.    As a proximate result, Plaintiffs' suffered damages which include but are not limited to physical injuries, pain and suffering, lost liberty, and psychological and emotional distress.

## COUNT IV –CRUEL AND UNUSUAL PUNISHMENT IN VIOLATION OF EIGHTH AMENDMENT AGAINST DEFENDANT GEO, CORIZON, AND JOHN/JANE DOE MEDICAL STAFF AND CORRECTIONS OFFICERS

145.    All pervious paragraphs are incorporated herein by reference.

146.    By and through the actions described above, Defendants GEO, Corizon, and John/Jane Doe medical staff and corrections officers violated the Eighth Amendment rights of Plaintiffs to be free from cruel or unusual punishment. In particular, Defendants

GEO, Corizon, and John/Jane Doe medical staff and corrections officers violated

Plaintiffs' rights to be afforded a reasonable degree of safety from serious bodily attack

and to be secure in their bodily integrity.

147.    These Defendants were deliberately indifferent to Plaintiffs' constitutional

rights. Defendants GEO, Corizon, and John/Jane Doe medical staff and corrections

officers had specific knowledge of facts and circumstances which would have caused a

reasonable person to conclude that a substantial risk of serious harm existed.

148.    Alternatively, the policies enacted and enforced by Defendants GEO,

Corizon, and John/Jane Doe medical staff and corrections officers created such an

obvious risk of serious harm that the Defendants' knowledge of this risk can be inferred

as a matter of law.

149.    The manner in which Defendants GEO, Corizon, and John/Jane Doe

medical staff and corrections officers violated Plaintiffs' clearly established constitutional

rights was objectively unreasonable, intentional, willful and wanton, and done in gross

and reckless disregard of Plaintiffs' rights.

150.    Defendants' deliberate indifference to a substantial risk of harm allowed

Defendant Walden to conduct unlawful sexual assaults and deprive inmates of their

bodily integrity and violate their personal security. Thus, Defendants' deliberate

indifference proximately caused Plaintiffs to suffer damages and injuries. These damages

include physical injuries, pain and suffering, lost liberty, and psychological and

emotional distress.

151.    Based upon the duration and breadth of the sexual abuse occurring at

GCCF and NENMDF, Defendants knew, had reason to know, and/or kept themselves

willfully blind to the obvious risk they were creating and knowingly permitting to continue.

### COUNT V – MEDICAL NEGLIGENCE ,NEGLIGENT HIRING, TRAINING, AND CREDENTIALING BY CORIZON AND GEO

152.    All previous paragraphs are incorporated herein by reference.

153.    Defendants Corizon and GEO breached the standard of care and acted in a negligent manner toward Plaintiffs, through one or more of the following acts or omissions:

    i.    failing to hire well-qualified employees and medical personnel;

    ii.    failing to provide or require adequate training of their personnel;

    iii.    failing to provide adequate procedures and guidelines for sexual assault.

154.    In addition, Defendants Corizon and GEO acted through their employees, agents, and medical staff, including but not limited to the nurses, PA, and corrections officers and are liable for their acts and omissions pursuant to the doctrine of *respondeat superior*.

155.    The employees, agents, and medical staff of Defendants Corizon and GEO, including the nurses, PA, and corrections officers failed to provide Plaintiffs adequate medical services and acted below the standard of care by committing the following acts and omissions:

156.    failing to properly assess the clinical condition of Plaintiffs;

157.    failing to respond appropriately to or notify the appropriate persons that Plaintiffs were being subjected to unusual and unnecessary medical treatment;

158.    failing to timely intervene despite clear and convincing evidence that inmates, including Plaintiffs, were being sexually assaulted by Defendant Walden; or

159.    failing to properly manage and monitor the clinics so as to prevent injury to Plaintiffs.

160.    The acts and omissions of Defendants Corizon and GEO and their employees, agents, and medical staff were a direct and proximate cause of damages to Plaintiffs.

161.    As a direct and proximate result of the actions and omissions of Corizon and GEO and its agents, employees, and medical staff, Plaintiffs now suffer and will continue to suffer from physical and mental injuries as described with more particularity herein.

## COUNT VI – MEDICAL NEGLIGENCE OF DEFENDANT WALDEN

162.    All previous paragraphs are incorporated herein by reference.

163.    Defendant Walden held himself out as a trained general practitioner and was required to provide the medical care of such.

164.    Defendant Walden failed to provide Plaintiffs adequate medical services and acted below the standard of care for a doctor in New Mexico by committing the acts as described with particularity herein.

165.    The acts and omissions of Defendant Walden were a direct and proximate cause of Plaintiffs' injuries as described herein.

166.    As a direct and proximate result of the acts of Defendant Walden, Plaintiffs suffered damages which are incorporated herein by reference.

## COUNT VII – NEGLIGENCE, NEGLIGENT STAFFING, TRAINING, SUPERVISION, AND HIRING -DEFENDANTS CORIZON AND GEO

167.    All pervious paragraphs are incorporated herein by reference.

168.    Defendants Corizon and GEO, through their agents and employees, were required to use the ordinary care of a reasonably well-operated medical clinic furnishing medical services to Plaintiffs, and to have policies and procedures in place that would ensure that Plaintiffs would receive that standard of care.

169.    Defendants Corizon and GEO, through their agents and employees, failed to provide Plaintiffs adequate medical services and acted below the standard of care including, but not limited to one or more of the following acts or omissions:

    i.    failing to properly train their agents and employees involved in the negligent care given to Plaintiffs;

    ii.    failing to properly train their agents and employees regarding sexual misconduct and assault;

    iii.    failing to properly train their agents and employees regarding the need for intervention when they suspect wrongdoing such as that which occurred in this case;

    iv.    failing to establish or to enforce policies and procedures for intervention when there are clear signs that inmates such as Plaintiffs are being sexually assaulted;

    v.    failing to have or to enforce policies requiring nurses to notify appropriate parties of sexual assault or misconduct;

    vi.    failing to adequately investigate the qualifications, training and backgrounds of the doctors, nurses, and other employees used to staff the clinic; or

vii.     failing to adequately supervise, discipline or re-train doctors, nurses and other employees in the clinic.

170.    Defendants Corizon and GEO are responsible for their  own negligence as well as the acts and omissions of their agents and employees, pursuant to the doctrine of *respondeat superior.*

171.    The acts and omissions of Defendants Corizon and GEO and their agents and employees were a direct and proximate cause of Plaintiffs' injuries as described herein.

172.    As a direct and proximate result of the actions and omissions of Defendants Corizon and GEO and their agents and employees, Plaintiffs now and will continue to suffer from the damages as described and incorporated herein.

**COUNT VIII:**
**NEGLIGENCE AND MEDICAL MALPRACTICE BY**
**DEFENDANTS GEO, CORIZON,  AND WALDEN**

173.    All previous paragraphs are incorporated herein by reference.

174.  Plaintiffs were patients of Defendant Walden and Corizon at all times pertinent to this Complaint.

175.  Defendant Corizon is responsible for its own negligence, as well as the acts and omissions of its employees and agents, pursuant to the doctrines of agency and *respondeat superior.*

176.  Defendants Corizon and Walden willfully, recklessly or negligently failed to provide Plaintiffs with adequate medical care and violated the standard of care for health care providers in New Mexico in ways including but not limited to the following:

a.  Performing excessive digital rectal exams;

b.   Performing digital rectal exams where not indicated;

c.   Performing improper digital rectal exams;

d.   Performing exams without a nurse or other third party present;

e.   Violating standards for hygiene and infection control; and

f.   Improper completion and retention of medical records.

177.   As a direct and proximate result of the intentional, willful, reckless, or negligent acts and omissions of Defendants Walden and Corizon and its employees and agents, Plaintiffs suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and severe psychological and emotional distress.

### COUNT IX:
### NEGLIGENT HIRING, CREDENTIALING, TRAINING, SUPERVISION AND RETENTION BY DEFENDANTS GEO, CORIZON, BRAVO AND HATCH

178.   All previous paragraphs are incorporated herein by reference.

179.   At all times pertinent hereto, Defendants Corizon and GEO, through their employees and agents, and Defendants Bravo and Hatch, were required to use the ordinary care of a reasonably prudent entity in hiring, credentialing, training, supervising, and staffing, and in having policies and procedures in place to ensure that inmates at their facility were not needlessly endangered.

180.   Defendants Corizon and GEO through their employees and agents, and Defendants Bravo and Hatch intentionally, willfully, recklessly, or negligently did not use the ordinary care of a reasonably prudent entity by committing acts and omissions including the following:

g.      Choosing not to ensure that inmates had access to safe and appropriate medical care;

h.      Choosing not to have or enforce adequate policies and procedures relating to medical care to prevent inmate abuse or predatory conduct;

i.      Choosing not to conduct adequate training of supervisors or staff to prevent abusive or predatory conduct by facility staff;

j.      Choosing not to adequately supervise to prevent abusive or predatory conduct by facility staff;

k.      Choosing not have or enforce safety policies related to hygiene and disease prevention, or conduct adequate training and supervision related to hygiene and disease prevention;

l.      Choosing not to investigate or inadequately investigating the background of prospective and current staff and management, including Defendant Walden;

m.      Choosing to hire and retain staff with a history of inappropriate, abusive or predatory conduct;

n.      Choosing not to train management and employees to properly investigate and address allegations of inappropriate conduct, abuse or predatory conduct;

o.      Choosing not to have or enforce adequate policies related to reporting, investigation and resolution of allegations of inappropriate conduct, abuse or predatory conduct.

p.      Choosing not to take adequate steps to safely operate or maintain the facility.

181.  Defendants Corizon and GEO are responsible for their own acts and omissions, as well as the acts and omissions of their employees and agents, pursuant to the doctrines of agency and *respondeat superior*.

182.  As a direct and proximate result of the intentional, willful, reckless or negligent acts and omissions of Defendants GEO, Corizon, Bravo, and Hatch and their employees and agents, Plaintiffs suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of

competent medical care and exposure to unsafe medical treatment, and severe
psychological and emotional distress.

183.  Because the acts or omissions of these defendants were willful, wanton or
done in reckless disregard for Plaintiffs' safety and the safety of all individuals working
or incarcerated at Defendants' facilities, these Defendants are subject to punitive damages
as well as compensatory damages.

### COUNT X:
### DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 BY DEFENDANTS GEO, CORIZON, BRAVO, AND HATCH UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS

184.    All previous paragraphs are incorporated herein by reference.

185.    Defendants Corizon, GEO, Bravo and Hatch are state actors who, at all
times pertinent hereto, were acting under color of state law. Defendants Corizon, GEO,
Bravo, and Hatch's policy and practice of inadequate training and supervision and of
turning a blind eye to ongoing sexual abuse violated the constitutional rights of Plaintiffs
to be free from cruel and unusual punishment.

186.    Defendants Corizon, GEO, Bravo, and Hatch were aware of conditions at
the Guadalupe County Correctional Facility and at the Northeast New Mexico Detention
Center that created a substantial risk that inmates would suffer serious harm – namely
sexual abuse – but chose not to take the appropriate steps to protect inmates from such
abuse.

187.    Despite this awareness, Defendants Corizon, GEO, Bravo, and Hatch had
a policy and practice of failing to adequately evaluate, train, monitor, supervise,
discipline, enforce policies and otherwise control their agents and employees.

188.     Defendants Corizon, GEO, Bravo, and Hatch further had a policy and practice of inadequate training, failing to encourage reporting of suspicious activity, and failing to adequately investigate and address inmate complaints.

189.     The number of inmates who were victimized both at the Guadalupe County Correctional Facility and at the Northeast New Mexico Detention Center over a period of years – as well as the awareness of this abuse by prison personnel including nurses, mental health officers, and correctional officers – shows a permanent and well-settled practice of choosing not to protect inmates from preventable sexual abuse.

190.     Defendants Corizon and GEO's policymakers were deliberately indifferent to conditions at the Guadalupe County Correctional Facility and the Northeast New Mexico Detention Center that permitted the sexual abuse of inmates, and their obvious consequence of depriving individuals like Plaintiffs of their civil rights.

191.     Defendants Corizon, GEO, Bravo, and Hatch's deliberate indifference further deprived Plaintiffs of access to competent medical care while incarcerated.

192.     Defendants Corizon, GEO, Bravo, and Hatch's deliberate indifference to the widespread practices at the Guadalupe County Correctional Facility and the Northeast New Mexico Detention Center that enabled the sexual abuse of inmates directly and proximately caused the constitutional deprivation resulting in Plaintiffs' damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and severe psychological and emotional distress.

193.     Defendants Corizon, GEO, Bravo, and Hatch acted intentionally, maliciously, and with reckless indifference to Plaintiffs' Constitutional rights and their

emotional and physical well-being when they permitted conditions that enabled the sexual abuse of inmates to occur in the medical units of the GCCF and the NENMDF. An award of punitive damages is necessary to punish this conduct and prevent this sort of mistreatment to patients in the future.

### COUNT XI- DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983 BY DEFENDANT WALDEN UNDER THE EIGHTH AND FOURTEENTH AMENDMENTS

194.    All previous paragraphs are incorporated herein by reference.

195.    Upon information and belief, Defendant Walden is a state actor employed by Corizon, Inc. pursuant to contract with the New Mexico Corrections Department.

196.    At all times pertinent hereto, Defendant Walden was acting under the color of state law.

197.    At the time of the events described herein, Plaintiffs were post-conviction inmates guaranteed the Eighth Amendment right to be free from cruel and unusual punishment.  This right includes Plaintiffs' rights to be afforded a reasonable degree of safety from serious bodily harm; to be secure in their bodily integrity; and to be free from attack by prison personnel.

198.    Defendant Walden's decision to commit repeated sexual abuse on inmates entrusted to his care for medical treatment was unreasonable, cruel and harmful.

199.    Defendant Walden acted with deliberate indifference to Plaintiffs' mental and physical well-being. and deprived them of competent medical care

200.    Defendant Walden was able to enact this sexual abuse on Plaintiffs only because of the abuse of his position as a physician who had contracted with the state to provide treatment to inmates pursuant to the state's constitutional obligation to provide

medical care to inmates. Without state authority, Defendant Walden would not have been able to gain access to Plaintiffs.

201.    As a direct and proximate cause of Defendant Walden's actions, Plaintiffs suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and severe psychological and emotional distress.

202.    Defendant Walden acted intentionally, maliciously, and with reckless indifference to Plaintiffs' Constitutional rights and their emotional and physical well-being when he sexually abused Plaintiffs. An award of punitive damages is necessary to punish his conduct and prevent this sort of mistreatment of New Mexico patients in the future.

## COUNT XII - NEGLIGENCE PER SE BY DEFENDANTS CORIZON, GEO, BRAVO, AND HATCH

203.    All previous paragraphs are incorporated herein by reference.

204.    Defendant Corizon owed a duty to Plaintiffs to use ordinary care in providing medical services at GCCF and NENMDF.

205.  Defendant GEO owed a duty to Plaintiffs to use ordinary care in operating and managing GCCF and NENMDF.

206.  Defendants Bravo and Hatch owed a duty to Plaintiffs to use ordinary care in overseeing and running GCCF and NENMDF

207.  By choosing not to use ordinary care to prevent foreseeable harm to Plaintiffs, Defendants Corizon, GEO, Bravo, and Hatch acted willfully, recklessly, wantonly, negligently and/or were negligent per se, breaching the duty they owed to Plaintiffs in multiple ways, including but not limited to the following:

33

a. Intentionally choosing to inflict emotional distress on Plaintiffs through their extreme and outrageous conduct;

b. Choosing not to ensure adequate levels of staffing and provide for video monitoring to protect inmates against sexual abuse, in violation of 28 C.F.R. § 115.13.

c. Choosing to hire and promote individuals to have contact with inmates who have engaged in sexual abuse in a prison, in violation of 28 C.F.R. § 115.17(a).

d. Choosing not to perform background checks, or performing inadequate background checks, and making inadequate efforts to contact prior employers before hiring new staff members, in violation of 28 C.F.R. § 115.17(c).

e. Choosing not to ask all applicants directly about any previous sexual misconduct, and choosing not to impose upon employees/agents a continuing affirmative duty to disclose any such misconduct, in violation of 28 C.F.R. § 115.17(f).

f. Choosing not to conduct training, or to conduct inadequate training, on zero tolerance policies for sexual abuse; inmates' right to be free from sexual abuse; the right of inmates and employees to be free from retaliation for reporting sexual abuse; the dynamics of sexual abuse in confinement; common reactions of sexual abuse victims; how to detect and respond to signs of threatened and actual sexual abuse; and how to avoid inappropriate relationships with inmates, in violation of 28 C.F.R. § 115.31.

208. Plaintiffs are in the class of persons sought to be protected by the aforementioned statutes, and the injuries suffered are the type intended to be prevented by enactment of these statutes.

209. As a direct and proximate cause of Defendant Walden's actions, Plaintiffs suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and severe psychological and emotional distress.

210. Defendants Corizon and GEO are liable for their own acts and omissions, and are also liable for the acts and omissions of their agents and employees pursuant to the doctrines of agency and *respondeat superior*.

## COUNT XIII -NEGLIGENCE PER SE BY DEFENDANT WALDEN

211.  Defendant Walden was employed to provide safe and proper medical care to the inmates of Northeast New Mexico Detention Facility and Guadalupe County Correctional Facility, and owed a duty to Plaintiffs to use ordinary care in providing medical care.

212.  Under the guise of providing appropriate medical care and by using his position as a facility doctor to sexually abuse Plaintiffs, Defendant Walden acted willfully, recklessly, wantonly, negligently and/or was negligent per se, breaching the duty he owed to Plaintiffs in multiple ways, including but not limited to the following:

g. Intentionally choosing to inflict emotional distress on Plaintiffs through his extreme and outrageous conduct;

h. Choosing to engage in criminal sexual penetration in the second degree on an inmate confined in a correctional facility or jail while in a position of authority over the inmate in violation of NMSA § 30-9-11(E)(2) (criminal sexual penetration);

i. Choosing to unlawfully or intentionally touch or apply force, without consent for sexual touching, to the unclothed intimate parts of another in violation of NMSA § 30-9-12 (criminal sexual contact);

j. Unlawfully and intentionally touching or applying force to another person with intent to injure that person, in violation of NMSA § 30-3-5 (aggravated battery);

k. Unlawfully or intentionally touching or applying force to another in a rude, insolent or angry manner in violation of NMSA § 30-3-4 (battery);

l. Willfully and intentionally assaulting another with intent to commit a felony, in violation of NMSA § 30-3-2(C) (aggravated assault);

m. Choosing to commit assault on another in violation of NMSA § 30-3-1 (assault);

n. Choosing, as a physician, to engage in unprofessional or dishonorable conduct in violation of NMSA § 61-6-15(D), including:

i. conviction of an offense punishable by incarceration in a state penitentiary or federal prison or conviction of a misdemeanor associated with the practice of the licensee;

ii.      making false or misleading statements regarding the skill of the licensee or the efficacy or value of the medicine, treatment or remedy prescribed or administered by the licensee or at the direction of the licensee in the treatment of a disease or other condition of the human body or mind;

iii.      gross negligence in the practice of a licensee;

iv.      manifest incapacity or incompetence to practice as a licensee;

v.      the use of a false, fraudulent or deceptive statement in a document connected with the practice of a licensee;

vi.      the prescribing, administering or dispensing of narcotic, stimulant or hypnotic drugs for other than accepted therapeutic purposes;

vii.      conduct likely to deceive, defraud or harm the public;

viii.      repeated similar negligent acts;

ix.      sexual contact with a patient or person who has authority to make medical decisions for a patient, other than the spouse of the licensee;

x.      conduct unbecoming in a person licensed to practice or detrimental to the best interests of the public;

xi.      sexual contact with a patient when the licensee uses or exploits treatment, knowledge, emotions or influence derived from the previous professional relationship; and

xii.      improper management of medical records, including failure to maintain timely, accurate, legible and complete medical records.

xiii.      Improper management of medical records, including failure to maintain timely, accurate, legible and complete medical records, in violation of 16.10.17 NMAC.

213. Plaintiffs are in the class of persons sought to be protected by the aforementioned statutes, and the injuries suffered are the type intended to be prevented by enactment of these statutes.

214.  As a direct and proximate cause of Defendant Walden's actions, Plaintiffs suffered physical and emotional damages, including physical injury, physical pain and suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and severe psychological and emotional distress.

## COUNT XIV-BREACH OF CONTRACT CLAIM BY ALL PLAINTIFFS AGAINST DEFENDANTS CORIZON AND GEO

215.  All previous paragraphs are incorporated by reference herein.

216.  The for-profit contracts under which both Defendants Corizon and GEO performed services at the Northeast New Mexico Detention Facility and the Guadalupe County Correctional Facility compelled them to execute their duties thereunder professionally, competently, safely, reasonably and in compliance with applicable standards.

217.  These contracts required Defendants Corizon and GEO to take all steps reasonably necessary to protect the safety and security of the inmates at NENMDF and GCCF, and to prevent reasonably foreseeable harm to the inmates, including harm from sexual abuse.

218.  Defendants Corizon and GEO breached these duties through their decisions not to adequately evaluate, train, monitor, supervise, discipline and enforce policies in order to prevent foreseeable harm to inmates.

219.  Plaintiffs were intended third-party beneficiaries to the contracts under which both Defendant Corizon and GEO performed their services.

220.  Defendants Corizon and GEO's breach of their service contracts proximately caused Plaintiffs' damages, including physical injury, physical pain and

suffering, invasion of bodily integrity, denial of competent medical care and exposure to unsafe medical treatment, and severe psychological and emotional distress.

### COUNT XV – ASSAULT AND BATTERY- DEFENDANT WALDEN

221.    Plaintiffs reallege and reasserts all prior paragraphs of this Complaint as though fully set forth herein, as though fully set forth here.

222.    The actions of Defendant Walden was not justified or privileged under state law.

223.    Defendant Walden's sexual assaults, as alleged herein, constitute assault and battery.

224.    As a direct and proximate result of the Defendant's conduct set forth above, Plaintiffs suffered physical injury, mental distress, fear, severe anxiety, and emotional suffering.

225.    Defendant's conduct was willful, wanton, malicious, and in utter disregard and indifference for Plaintiffs' legal rights, warranting imposition of punitive damages

### JURY TRIAL DEMAND

226.    Plaintiffs hereby demand a trial by jury.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiffs F.M., S.J., A.M., M.L., M.M., M.S., M.A., L.R., M. O., C. M., J. K., and S.W., respectfully request that they be awarded compensatory and punitive damages against all named Defendants in an amount to be proven at trial, costs, pre-judgment interest, post-judgment interest, attorney fees, and any and all other relief that this Court deems to be proper and appropriate.

Respectfully submitted,


**/s/ *Frances Carpenter***
Frances Carpenter
*Attorney for Plaintiffs*
Law Office of Frances Crockett
118 Wellesley Drive SE
Albuquerque, NM 87106
Phone: (505) 314-8884
Fax: (505) 265-1319
Email: frances@francescrockettlaw.com

I hereby certify that a true and correct copy
of the foregoing was served to opposing
counsel via CM/ECF this 29th day of
August, 2013.
**/s/ *Frances Carpenter***
Frances Carpenter